The opinion of the Court was delivered by
Poché, J.
Lee Vines having been convicted of manslaughter under a charge of murder, urges on apiroal, by motion for new trial and in arrest and bill of exceptions, numerous grounds for relief from the sentence of the court, condemning him to hard labor for twenty years.
I. In Lis motion ill arrest of judgment he sets up the plea of prescription of one year, in bar of the prosecution under which he was convicted, based on the ground that the indictment under which he was tried was found on January ID, 1832, charging an offense that was committed on June 6,1873, or more than eight years preceding the date of said indictment.
From his motion and the bill of exceptions taken from the Judge’s ruling we gather the following facts bearing on this point:
On the 28th of August, 1873, the defendant was indicted for murder, alleged to have been committed on June 6, 1873, and besides the issuing of a bench warrant, no proceedings were taken until the 19th of January, 1882, when the sheriff returned, that he had on that day arrested the accused, who had voluntarily surrendered himself to that officer. On the same day the District Attorney entered a not. pros, on *1075 tlie indictment of August 28, 1873, and on the same day he presented the indictment of January 19, 1882, under which Vines was tried, and convicted of manslaughter.
The last indictment contained the following averment: “ and that the said Lee Vines * * had absconded and fled from justice.'1'1
The first ground taken by the defendant is, that prescription was not interrupted by the first prosecution, because it had' been voluntarily abandoned by the State. This ground must be readily conceded as resting on a principle sanctioned by several decisions of this Court. State vs. Thomas, 30 An. 301; State vs. Baker, Ib. 1134; State vs. Curtis, Ib. 1166; State vs. Morrison, 31 An. 211.
As a defective prosecution, when it is annulled, or a prosecution voluntarily abandoned by the State, must be considered as having neyer taken place, as. an absolute nullity; and as such a prosecution cannot be invoked or used by the State as an element for the interruption of prescription, we shall, therefore, eliminate that indictment from discussion, and treat tire question as though such an indictment had never been found or exhibited.
This course, which is a natural consequence of the theory just adopted, and which is a corollary of one o.f the most strenuous arguments of defendant’s counsel, disposes summarily of all the relief which they claim under that indictment, and under its abandonment by the State. It is, therefore, perfectly immaterial for the purposes of this investigation that this original indictment contained no averment that the accused liad fled from justice, and that in abandoning the prosecution for murder under that indictment, the State had also, and consequently, abandoned the prosecution for manslaughter, which, 'under our criminal jurisprudence was included, and could be considéred at the trial under the charge of the greater offense of murder, resulting from the same act. Defendant’s counsel contend with apparent earnestness, that the last sentence of Section 936, Revised Statutes, which provides for a bar by the prescription of one year against the prosecution, trial or punishment of persons for certain crimes and offenses, and which sentence or proviso reads as follows: “ Nothing herein contained shall extend to any person absconding or fleeing from justice,” was not intended as an element of interruption of the prescription provided for in the statute, but because the words are not used in the past tense, they must be construed as referring to the accused at the time or moment that it is proposed to prosecute, try, or punish him. •
Hence, they argue, that as the accused was not a fugitive from' justice, bnt was, on the contrary, in legal custody, and present in court when the indictment of January, 1882, was presented against *1076 him, his plea of prescription could not be defeated or met, by alleging and proving that he had absconded and fled from justice, and- it is confidently asserted that any other construction would involve a “ murder of the king’s English in cold blood.”
A careful analysis of the statute, with the assistance of several decisions of our predecessors, compels us to undergo that risk. While it is- true that a person may be indicted while he was absconding or fleeing from justice, it is equally true that he cannot be arraigned, tried or punished, unless he be present, in legal custody. -Hence, in drafting this statute, the law maker lias been careful to use the disjunction, in providing that “ no person shall be prosecuted, tried or punished, for any offense,” etc.
Now, what is meant by the words, that “ nothing herein shall extend to any person absconding or fleeing from justice ? ” and what is herein provided? It is provided that no one shall be prosecuted, etc., for certain offenses, unless the charge shall be made against him within one year next after the offense shall have been made known to a public officer having the power to direct the investigation or prosecution. The proviso, therefore, denies that protection to the offender who absconds or flees from justice, or in. other words, denies him the right of pleading the prescription established by that statute; hence, in his case it becomes immaterial to consider the time when his offense was made known to a public officer, and in his case the plea' of prescription is fully met by averring and proving that he had absconded or fled from justice.
Such was the construction given to the statute by this Court in several cases, as conceded by defendant’s counsel, when they say in their brief: “We have failed to find a single case when this (their) view of the statute has been directly urged on the Supreme Court, and hence, in the absence of all questions as to the true meaning and intent of this clause, some of the decisions seem to favor the idea, that absconding or fleeing from justice is a'cause interrupting prescription.” State vs. Foster, 7 An. 255; State vs. Same, 8 An. 290 ; State vs. Bilbo, 19 An. 96 ; State vs. Morrison, 31 An. 211. From the latter opinion we quote the following terse and significant language : “ And in such prosecutions, unless the State shows a previous indictment of the same person for the same offense, found within the year, or cause-why such indictment was not found, such as the absconding of the offender, * * the conviction will not be sustained.”
To the argument that the averment “ that the said Lee Vines had absconded and fled from justice ” was too vague, in not connecting the act of absconding or fleeing, with the offense charged, or specifying the time or length of such absconding, we answer that the objection *1077 comes too late, and should have been urged at the trial when the State offered proof in support of the averment. But even a timely objection would not be tenable, for the averment is a textual compliance with the words of the statute, which must be construed as meaning, that the absconding or fleeing has reference to the charge under which the party is prosecuted, tried or punished. Hence, in this case, we hold that the averment in the indictment has reference to a flight from justice by the accused, in view, and on account of the offense committed on June 6, 1873. While it would have been more satisfactory or more regular for the indictment to have mentioned the date of the flight of the accused, and the length of its duration, yet we find nothing in the statute, as interpreted in our jurisprudence, which would have required that provision as sacramental to the binding effect of the averment.
If, instead of charging murder, which is an imprescriptible crime, the District Attorney had merely charged manslaughter, and had incorporated this identical averment and no more, as a necessary element of pleading to admit of proof of interruption of prescription, it is clear to our minds that a motion to quash the indictment on such a ground could not have prevailed. 19 An. 76, State vs. Bilbo.
The record shows that the averment was established by the evidence, and our conclusion is, that the motion in arrest was properly overruled.
2. The defendant also moved for a new trial, on the ground of the alleged misconduct of one of the jurors, who, during a recess of the court, left the jury box, and crossing over through an aisle, spoke to a physician, whom he consulted about his health, as he was then sick. The record shows that special permission had been given to the sheriff by the Judge, to allow a consultation between the juror arid his physician, in the presence of the sheriff, who should not allow the two to speak of any other subject. This circumstance does not present a case of separation or misconduct, as contemplated and reprobated by the law. This is now well settled in our'jurisprudence. State vs. Turber, 10 An. 501; State vs. Johnson, 30 An. 921.
3. The juror who swore on his voir dire that he was opposed to the infliction of capital punishment, was properly rejected as a juror to sit on a trial for murder. This is elementary, and requires no support at this stage of our jurisprudence, either by argument or authority.
4. The Judge did not err in refusing to entertain the challenge for cause of the juror who stated that he had previously formed an opinion as to the guilt or innocence of the accused; but that his opinion, which was based merely on rumor, would readily yield to evidence, and that he had no bias in the case.
*1078 This point has been considered at great length, and Anally settled in keeping with the Judge’s ruling in a recent case by tiiis Court. State vs. DeRancé, 34 An. 184, and authorities there cited.
• 5. We find no error in the Judge’s refusal to admit the evidence of threats of the deceased against the accused, and of the contents of anonymous letters writteil by the deceased to the accused, and dropped in the latter’s yard.
Such evidence is not admissible in justification of a homicide, unless the threats were first shown to have been followed, at the time of the killing, by some assault or hostile demonstration by the deceased. The record in this case shows, on the contrary, that when killed, the deceased was unarmed and in the custody of a law-officer, to the knowledge of the accused, who was one of the parties who had procured his arrest. State vs. Jackson, 35 An. 1087, and authorities therein cited; State vs. MeNeeley, decided at Monroe, not yet rexiorted.
0. We have carefully examined the full, exhaustive, and very able charge of the District Judge to the'jury, and his impartial exposition of the law of self-defense, and find both correct and sound in every particular and, therefore, approve of his refusal to give the charge requested by the defendant’s counsel.
7. For the same reasons that the Judge had for excluding evidence of previous threats of the deceased against the accused, he was justified in excluding evidence of the desperate character of John Pye, the deceased.
8. The objection of counsel to the correction of the minutes, so as to make them conform with the true state of facts and incidents of the trial, must, in the presence of recent and repeated adjudications of this Court on that point of jurisprudence, be considered as trivial, and not worthy of serious consideration.
We have been at great pains to closely examine and carefully weigh the numerous defenses which have been suggested in this trial by the ingenuity and zeal of defendant’s very able counsel, who have left no stone unturned for .the purpose of saving the life and. the liberty of their unfortunate client, and we have no hesitation in saying that he has had a fair, just and impartial trial. Hence, we can afford him no relief.
Judgment affirmed.